## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 09 2015, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

William R. Groth
David T. Vlink
Fillenwarth Dennerline Groth & Towe, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David Moss, | July 9, 2015 |
| *Appellant-Respondent,* | Court of Appeals Cause No. 49A02-1501-PL-7 |
| v. | Appeal from the Marion Circuit Court |
| | Cause No. 49C01-1405-PL-17919 |
| Indianapolis Department of Natural Resources, | The Honorable Louis F. Rosenberg, Judge |
| *Appellee-Petitioner.* | |

**Barnes, Judge.**

## Case Summary

David Moss appeals the trial court's granting of a petition for judicial review filed by the Indiana Department of Natural Resources ("DNR") regarding a final order modifying the termination of his employment as a conservation officer to a suspension without pay. We affirm in part, reverse in part, and remand.

## Issues

Moss raises two issues, which we restate as:

    I.      whether DNR's petition for judicial review was timely filed; and

    II.     whether the trial court properly granted DNR's petition for judicial review.

## Facts

Moss was employed by DNR as a Conservation Officer in the Columbus region. In 2013, Moss's conduct was investigated by his superiors on two separate occassions. Although some of the allegations against Moss were not substantiated, many of the allegations that related to Moss's integrity as a law enforcement officer were substantiated.

In June 2013, DNR's Law Enforcement Division's Disciplinary Action Board ("the Board") reviewed the complaints filed against Moss. The Board found four specific areas of concern regarding Moss's conduct: 1) being so intoxicated

he could not recall events and defend his actions; 2) enabling his father, a felon, to violate state and federal laws concerning the possession of a firearm by a felon; 3) assisting his father in violating a protective order; and 4) failing to cooperate fully with the investigation regarding his father's cultivation of marijuana and possession of firearms. Each of the Board members recommended that Moss be terminated. In making their recommendations, each Board member cited concerns about Moss's lack of honesty and integrity. For example, one Board member stated, "Officer Moss' actions and deception has [sic] tarnished his reputation with our agency as well as the community, and as a result he cannot be supported by the various prosecutors in Bartholomew and surrounding counties." App. p. 16. Another Board member "stated that he no longer feels that he can trust Officer Moss' judgment, nor depend on him to have integrity." *Id.* The Director of the Law Enforcement Division accepted the Board's recommendation that Moss be terminated.

[5] A pre-deprivation hearing was conducted in July 2013, after which the Director terminated Moss's employment. Moss's termination was reviewed by an Administrative Law Judge ("ALJ") for the Natural Resources Commission ("NRC"), who issued a non-final order with 158 findings and conclusions recommending that Moss's termination be commuted to a suspension without pay for nine months. DNR objected to the non-final order, and the AOPA Committee of the NRC held a hearing on the objections on April 23, 2014. After modifying three of the ALJ's findings and conclusions, the NRC agreed

that Moss's termination should be commuted to a suspension without pay for nine months.

[6]     In making its decision, the NRC concluded that during the first investigation the investigator "believed Moss to be a liar" and the investigator's approach toward the investigation "does not convey a goal of learning the truth as much as it conveys prejudgment and the intent to obtain Moss' resignation." *Id.* at 94. The NRC also concluded that the evidence was insufficient to uphold a number of the charges leveled against Moss as a result of the second investigation. The NRC found in part:

> 136. One might disregard the attitude displayed during the [first] investigation except for the inaccuracies discovered in the [second] investigation. Combined, these factors increase misgivings regarding the objectivity of the investigation that brought Moss to his demise.
>
> * * * * *
>
> 141. Despite imperfections apparent in the investigation it is clear that Moss is guilty of violations of the Division's rules of conduct.
>
> * * * * *
>
> 150. While the evidence is not sufficient to uphold a number of the charges leveled against Moss as the result of the [second] investigation, Moss' injudicious actions were disclosed as a result.
>
> 151. Full consideration has been given to the charges that have been affirmed on administrative review and well as Moss' lack of judgment as noted with respect to certain charges that were not affirmed.
>
> 152. It is concluded that Moss acted imperfectly, particularly with respect to matters involving his father. Empathy with Moss' dilemma with respect to his father is appropriate but his actions, and inactions, cannot be overlooked.
>
> 153. Moss' failure to be fully forthcoming during the course of the . . . investigations is unfortunate but judgment against Moss in that

regard is tempered slightly by the manner in which the investigations appear to have been conducted.

154. Disciplinary actions against Moss is appropriate. However, it is concluded that Moss' character and reputation is not so utterly tarnished so as to justify his termination from employment.

*Id.* at 94-96.

[7] The NRC's final order was dated April 28, 2014, and indicates that copies were sent to Moss's attorney and counsel for DNR. On April 30, 2014, the ALJ issued a "Notice of Final Order of the Natural Resources Commission." *Id.* at 98. The Notice stated that the NRC had adopted findings of fact and conclusions of law with a final order, explained what findings and conclusions of the non-final order the NRC modified, informed the parties that the NRC is the ultimate authority and that its action is its final determination, and gave instructions regarding judicial review. The Notice specifically stated, "A person who wishes to seek judicial review must file a petition with an appropriate court within 30 days and must otherwise comply with IC 4-21.5-5." *Id.*

[8] On May 30, 2014, DNR filed a petition for judicial review raising the following issues: 1) the evidence supports the conclusion that the DNR Director had just cause to terminate Moss; 2) the final order was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law because it failed to identify the "just cause" standard for termination and the NRC did not have the authority to modify Moss's termination to a suspension; and 3) the findings are contrary to law. On August 21, 2014, Moss moved to dismiss the petition for review as untimely. The trial court denied Moss's motion and, on December

19, 2014, the trial court issued an order granting DNR's petition for judicial review. The trial court held that the NRC violated Indiana Code Section 4-21.5-3-27 by not clearly identifying the "just cause" standard of review in the final order. The trial court vacated the final order and remanded. Moss now appeals.

## Analysis

### I. Timeliness of Petition for Judicial Review

[9] Moss first contends that DNR's May 30, 2014 petition for judicial review was not timely filed. Pursuant to Indiana Code Section 4-21.5-5-5,"Except as otherwise provided, a petition for review is timely only if it is filed within thirty (30) days after the date that notice of the agency action that is the subject of the petition for judicial review was served." Moss asserts that the notice of the agency action occurred on April 28, 2014, the date of the final order. On the other hand, DNR contends that the notice of agency action occurred on April 30, 2014, when the notice of final order was issued, making its May 30, 2014 petition for judicial review timely. On this issue, we agree with DNR.

[10] We reach this conclusion because Indiana Code Section 4-21.5-3-28(g), describing the final order of the ultimate authority, requires the final order in part to "identify any differences between the final order and the nonfinal order issued by the administrative law judge under section 27 of this chapter[.]" The April 28, 2014 final order did not identify the differences between the final order and non-final order, while the April 30, 2014 notice of final order did

identify the differences. Further, April 30, 2014 notice explained that the AOPA Committee for the NRC is the ultimate authority and its action is final and that a petition for judicial review must be filed within thirty days. The April 28, 2014 order did not include such information. Accordingly, DNR's petition for judicial review was required to be filed within thirty days of the April 30, 2014 notice of final order and was timely filed on May 30, 2014.

## II. Merits of DNR's Petition

[11] Moss argues that DNR is not entitled to judicial review on any basis raised in its petition. Based on the record before us, however, we do not reach the merits of DNR's petition for judicial review.

[12] A person aggrieved by an agency action may file a petition for review in the appropriate trial court. Ind. Code § 4-21.5-5-2. A person may file a petition for judicial review "only after exhausting all administrative remedies available within the agency whose action is being challenged and within any other agency authorized to exercise administrative review." I.C. § 4-21.5-5-4(a). The party seeking judicial review has the burden of proof and is entitled to relief only if the trial court determines that the party seeking relief has been prejudiced by an agency action that is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (2) contrary to constitutional right, power, privilege, or immunity;
> (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

I.C. § 4-21.5-5-14(a),(d). Judicial review is confined to the agency record, and the trial "court may not try the cause de novo or substitute its judgment for that of the agency." I.C. § 4-21.5-5-11.

[13] Further, a party may only obtain judicial review of issues that were raised before the administrative agency and preserved for review. *Dev. Servs. Alternatives, Inc. v. Indiana Family & Soc. Servs. Admin.*, 915 N.E.2d 169, 178 (Ind. Ct. App. 2009), *trans. denied*. More specifically:

> A person may obtain judicial review of an issue that was not raised before the agency, only to the extent that:
>
> (1) the issue concerns whether a person who was required to be notified by this article of the commencement of a proceeding was notified in substantial compliance with this article; or
>
> (2) the interests of justice would be served by judicial resolution of an issue arising from a change in controlling law occurring after the agency action.

I.C. § 4-21.5-5-10.

[14] Here, neither the parties nor the trial court address whether the issues raised by DNR in its petition for judicial review were properly presented to the NRC first. Also, for whatever reason, the agency record was not transmitted to us on appeal, and DNR's objections to the ALJ's non-final order were not included in the record on appeal. From the minutes of the NRC hearing following DNR's objection to the ALJ's non-final order, it appears that DNR's objections were based on the length of the suspension imposed by the ALJ, the evidence of

Moss's lack of integrity, and the initial unanimous recommendation of termination and the subsequent approvals of the termination by the Board and Director.[1]

The reason underlying the requirement that a party exhaust administrative remedies—judicial economy—is also relevant to the requirement that a party raise an issue to an administrative agency before seeking judicial review. Specifically, requiring a party to raise an issue to the administrative agency first provides "an agency with an opportunity 'to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise, and to compile a [factual] record which is adequate for judicial review." *Johnson v. Celebration Fireworks, Inc.*, 829 N.E.2d 979, 982 (Ind. 2005) (explaining the policy considerations of the exhaustion doctrine in administrative proceedings) (citations omitted) (brackets in original).

It simply is not clear whether DNR raised the issues in its petition for judicial review to the NRC so as to preserve them for judicial review. Accordingly, we remand to the trial court for consideration of whether the issues raised by DNR in its petition were properly preserved for judicial review as required by Indiana Code Section 4-21.5-5-10.

To the extent DNR properly preserved the issue of whether the NRC identified the "just cause" standard, we address for the sake of judicial economy the trial

---

[1] The minutes of the NRC hearing were included in the record on appeal.

court's conclusion that the NRC's final order was insufficient. Indiana Code Section 4-21.5-3-27(c) requires the final order to include:

> separately stated findings of fact and . . . conclusions of law for all aspects of the order, including the remedy prescribed and, if applicable, the action taken on a petition for stay of effectiveness. Findings of ultimate fact must be accompanied by a concise statement of the underlying basic facts of record to support the findings. . . .

[18] First, nothing in this statute requires the final order to identify a particular standard of review. Nevertheless, the final order stated, "Applicable to the substantive issues presented by the instant proceeding is I.C. 14-9-8 and 312 IAC 4." App. p. 70. Although these citations could have been more precise, they do not "encompass a veritable sea of legal text" as the trial court suggests. *Id.* at 9. Indiana Code 14-9-8 controls law enforcement of DNR, and Indiana Code Section 14-9-8-14(a)provides, "The division director may, with the approval of the director, discharge, demote, or temporarily suspend an employee of the division, for cause, after preferring charges in writing." Similarly the Administrative Code provision cited in the final order governs law enforcement of the NRC, and 312 IAC 4-4-5 provides:

> The division director (or a person designated by the division director) may, for just cause, discharge, demote, or suspend an employee after preferring charges in writing and after the employee is afforded a predisciplinary meeting with the division director (or a person designated by the division director). The division director will normally impose discipline in a progressive manner; however, the division director shall impose the discipline that is appropriate to the seriousness of the misconduct.

The final order did not reference other substantive authority to suggest that it applied a different standard. Thus, these citations, though imprecise, are not fatal to the NRC's final order.[2]

## Conclusion

Although DNR's petition for judicial review was timely filed, it is not clear whether the issues raised in the petition were preserved for judicial review. To the extent the issue of the identification of the "just cause" standard was preserved, the final order sufficiently identified the appropriate standard. We affirm in part, reverse in part, and remand.

We affirm in part, reverse in part, and remand.

Riley, J., and Bailey, J., concur.

---

[2] This alleged error illustrates the reason for requiring a party to raise an issue to the agency. Had DNR raised the issue in its objection to the ALJ's non-final order, any ambiguity regarding the identification and application of the appropriate standard could have been resolved by the NRC in its final order.